1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  AMANDA J. MURRAY, State Bar No. 223829
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5741
    Fax:  (415) 703-5843
8   Email:  Amanda.Murray@doj.ca.gov

9  Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **Martin Castaneda,** | C 07-3726 WHA (PR) |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **B. Curry, Warden, et al.,** | Judge: The Honorable William Alsup |
| Respondent. | |

## INTRODUCTION

Martin Castaneda is a California state inmate at the Correctional Training Facility, proceeding pro se in this habeas corpus action. Petitioner alleges that the Board of Parole Hearings unconstitutionally denied him parole at his 2006 parole consideration hearing. Because Petitioner fails to prove that the state court decisions denying relief are contrary to, or an unreasonable application of, clearly established federal law, or that the decisions involved an unreasonable determination of the facts, his disagreement with the Board's parole denial does not entitle him to a writ of habeas corpus and his petition should be denied.

On July 14, 2007, this Court issued an order to show cause. Respondent Ben Curry,

1 | Warden, answers as follows:

## ANSWER TO THE ORDER TO SHOW CAUSE

In response to the petition for writ of habeas corpus filed on July 19, 2007, Respondent hereby admits, denies, and alleges the following:

1. Petitioner is in the lawful custody of the California Department of Corrections and Rehabilitation after being convicted of attempted first degree murder with a use of firearm enhancement. (Ex. A, Abstract of Judgment.) He is currently serving an indeterminate sentence of seven years to life. (Ex. A; Ex. B, Subsequent Parole Consideration Hearing, dated 3/15/06, p. 1.) Petitioner does not challenge his underlying conviction in the current proceeding.

2. Respondent affirmatively alleges that on October 8, 1990, Petitioner was drinking alcohol and partying at his home with friends. (Ex. B at 9.) After an altercation between two women, Petitioner agreed to drive one them, Lisa Luera, to her cousin's house. (Ex. C, Life Prisoner Evaluation Report, February 2003 at 1-2.)

3. Respondent affirmatively alleges that after dropping Ms. Luera off, Petitioner ran out of gas. (Ex. B at 10; Ex. C at 2.) He returned to Ms. Luera's cousin's house to ask Ms. Luera for help. (*Id.*)

4. Respondent affirmatively alleges that Petitioner was calling for Ms. Luera when a male – Jorge Carreon – came out of the house. (Ex. B at 10; Ex. C at 2.) The two men began arguing and got into a physical fight. (*Id.*; Ex. D, Probation Officer's Report at 2.) Fidel Carreon – Jorge's brother and the future victim – intervened and broke up the fight. (Ex. D at 2.)

5. Respondent affirmatively alleges that as Petitioner was leaving, he yelled "I'll be back." (Ex. B at 7; Ex. D at 2.)

6. Respondent affirmatively alleges that Petitioner returned to his home and began drinking heavily. (Ex. B at 12-13.) Petitioner became uncontrollably angry and vowed revenge, indicating that he would take care of it in his own way. (*Id.* at 12.)

7. Respondent affirmatively alleges that Petitioner continued drinking throughout the next day and remained angry over his fight with Jorge Carreon. (Ex. B at 12-13; Ex. C at 2.) In the evening, Petitioner – still intoxicated and angry – left his house with two friends, seeking

revenge. (*Ibid.*) As they were driving, Petitioner saw Fidel Carreon outside where the fight occurred. (*Ibid.*)

8. Respondent affirmatively alleges that Petitioner, armed with a .22 caliber handgun, confronted the victim, Fidel Carreon. They began to argue and Petitioner became increasingly angry. (Ex. B at 15, 19-21; Ex. D at 2.)

9. Respondent affirmatively alleges that, in anger, Petitioner pulled out the handgun and fired seven shots at Fidel Carreon – five of them hitting Mr. Carreon in the chest, groin, and right arm. (Ex. B at 15, 19-21; Ex. D at 2-3.) Petitioner fled the scene and was later arrested, admitting that he shot Mr. Carreon because he was still angry over the fight that occurred with the victim's brother. (*Id.* at 3.)

10. Respondent affirmatively alleges that Petitioner has been associated with the Azusa 13 gang. (Ex. B at 15-17, 48-49, 88-90; Ex. D at 9.)

11. Respondent affirmatively alleges that Petitioner had a criminal history before murdering Mr. Carreon: Petitioner was arrested and convicted for receiving stolen property; contempt of court; and possession of a deadly weapon. (Ex. B at 37-38; Ex. D at 5.)

12. Respondent affirmatively alleges that Petitioner has received one serious rules violation for refusing to work during a lockdown in 2000 and three counseling memoranda (CDC Form 128-A) between 1992 and 1995, including one for theft. (Ex. B at 52-53; Ex. E, Disciplinary Sheet.)

13. Respondent admits that, on March 15, 2006, the Board found Petitioner unsuitable for parole. (Ex. B at 72-91.) The Board based its decision on: (a) the brutality of the commitment offense; (b) the trivial motive for the crime; and (c) insufficient participation in self-help and therapy for anger management, stress, and substance abuse – all contributing factors to attempting to murder Mr. Carreon. (*Id.*)

14. Respondent admits that the Los Angeles County Superior Court provided a two-page reasoned decision denying Petitioner's petition for writ of habeas corpus on January 19, 2006.

(Ex. F, Superior Court Pet. & Denial.)[1] The court found that the Board's reliance on the commitment offense, Petitioner's failure to sufficiently participate in self-help and therapy programs, and additional factors cited by the Board, constituted some evidence supporting the Board's decision finding Petitioner unsuitable for parole. (*Id.*) Accordingly, the court found that Petitioner's positive behavior did not outweigh the factors of unsuitability. (*Id.*)

15. Respondent admits that the California Court of Appeal denied Petitioner's petition for writ of habeas corpus on March 21, 2007. (Ex. G, Appellate Court Pet. & Denial.)

16. Respondent admits that the California Supreme Court denied Petitioner's request for review on June 13, 2007. (Ex. H, Supreme Court Pet. & Denial.)

17. Respondent admits that Petitioner's state court petitions generally allege the same claims as in this federal petition. Petitioner has thus exhausted his state court remedies regarding his claims that continued reliance on his commitment offense and failure to adequately participate in self-help and therapy violates due process.[2] (*See generally*, Petn.; Exhs F-H.)[3] However, Respondent denies that Petitioner has exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of parole denial.

18. Respondent denies that the state court's denial of habeas corpus relief was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denial was based on an unreasonable interpretation of facts in light of the evidence

---

1. To avoid repetition and unnecessary volume, the exhibits attached to Petitioner's state court petitions have been removed. Respondent will provide these documents upon the Court's request.

2. Respondent interprets these claims as challenging the sufficiency of the evidence relied on by the Board in denying Petitioner parole. Further, in his state court petitions, Petitioner asserted that: (1) the Board's parole denial reflected a systemic biased by the Board against granting parole; (2) his Board panel was biased; (3) the Board failed to provide him with "due consideration;" and (4) the Board's denial punished him for a greater crime than the one for which he was convicted. However, Petitioner failed to assert these claims in his federal petition and, thus, Respondent will not address them.

3. In his federal petition, Petitioner also asserted that he had a liberty interest in parole. (Petn. at 8.) However, the Court denied this claim as insufficient for habeas relief.

presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254.

19. Respondent preserves the argument that Petitioner does not have a federally protected liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole release date created by unique structure and language of state parole statute); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest in parole because serving a contemplated sentence does not create an atypical or significant hardship compared with ordinary prison life); and *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected liberty interest in a parole date).

20. If Petitioner has a federally protected liberty interest in parole, Respondent affirmatively alleges that Petitioner had an opportunity to present his case to the Board, and that the Board provided him with a detailed explanation as to why he was denied parole. (Ex. B.) Thus, Petitioner received all process due under *Greenholtz*, 442 U.S. 1, the only clearly established United States Supreme Court law regarding the due process rights of inmates at parole consideration hearings.

21. Respondent affirmatively alleges that the Board considered all relevant and reliable evidence before it, and that the decision to deny Petitioner parole based on his commitment offense and failure to adequately participate in self-help and therapy is supported by some evidence. However, Respondent further affirmatively alleges that the some-evidence standard does not apply in federal habeas proceedings challenging parole denials, and that the some-evidence standard is only clearly established federal law in the prison disciplinary context.

22. Respondent affirmatively alleges that the Board properly considered the gravity of Petitioner's commitment offense, as required under California Penal Code section 3041(b). Respondent denies that the Board's reliance, in part, on the commitment offense to deny Petitioner parole violates his due process rights. *Sass*, 461 F.3d at 1129; *Irons v. Carey*, ___ F.3d

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    Castaneda v. Curry
                                                                              C 07-3726 WHA (PR)

1  ___, 2007 WL 2027359 (9th Cir. July 13, 2007).

2   23.  Respondent affirmatively alleges that the Board relied on factors other than the commitment offense in denying Petitioner parole. However, the California Supreme Court held in *Dannenberg* that the Board may rely solely on the circumstances of the commitment offense. 34 Cal.4th 1061, 1094 (2005).

24.  Respondent affirmatively alleges that the Los Angeles County District Attorney opposed Petitioner's release on parole. (Ex. B.)

25.  Respondent affirmatively alleges that the state courts properly used the some-evidence standard to evaluate the Board's decision. *Dannenberg*, 34 Cal. 4th at 1071. Respondent affirmatively alleges that the correct application of the some-evidence test is whether some evidence in the record supports the Board's parole denial.

26.  Respondent denies that Petitioner is entitled to immediate relief.

27.  Respondent denies that the Board's decision denying parole violated Petitioner's due process rights.

28.  If the petition is granted, Petitioner's remedy is limited to a new parole consideration hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-985 (9th Cir. 2002); *In re Rosenkrantz*, 29 Cal.4th 616, 658 (2002).

29.  Respondent admits that Petitioner's claim is timely under 28 U.S.C. § 2244(d)(1), and that the petition is not barred by the non-retroactivity doctrine.

30.  Respondent denies that an evidentiary hearing is necessary in this matter.

31.  Respondent affirmatively alleges that Petitioner fails to state or establish any grounds for habeas corpus relief.

32.  Except as expressly admitted above, Respondent denies, generally and specifically, each and every allegation of the petition, and specifically denies that Petitioner's administrative, statutory, or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the petition for writ of habeas corpus be denied.

//

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.

### THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

Under AEDPA, a federal court may only grant a writ of habeas corpus if the state court's adjudication of a claim on the merits was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

A state court decision is contrary to clearly established federal law if "the state court applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citations and internal quotation marks omitted). A state court decision is an unreasonable application of clearly established law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. It is not enough that the state court applied the law erroneously or incorrectly; rather, the court must have made an objectively unreasonable application. *Id.* at 75-76.

Here, the state court decision denying Petitioner's claim for habeas relief is neither contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. First, Petitioner received all process required under *Greenholtz*, the only clearly established federal law specifically addressing an inmate's due process rights in a parole consideration hearing. Second, the state court decision did not involve an unreasonable interpretation of the evidence; rather, some evidence supports

1 the state court holding denying Petitioner parole. Thus, Petitioner fails to establish an AEDPA
2 violation, and the state court decision denying habeas relief must stand.

###   A.   The State Court Decision Was Not Contrary to Clearly Established Federal Law.

Petitioner is not entitled to federal habeas relief because he received all process due under *Greenholtz* – the only United States Supreme Court decision establishing due process protections for parole determinations. In *Greenholtz*, the Court held that the only process required at a parole consideration hearing is an opportunity for the inmate to present his case, and if parole is denied, an explanation for the denial. *Greenholtz*, 442 U.S. at 16.

Petitioner received both of these protections at his 2006 parole consideration hearing. First, Petitioner had a chance to fully present his case before the Board. Petitioner discussed the commitment offense, the reason for the crime, his participation in vocational activities while incarcerated, and his parole plans should be released on parole. (Ex. B.) The Board also questioned Petitioner about his limited participation in self-help activities and therapy. (*Id.*)

When the Board returned after deliberation, it provided Petitioner with a full explanation as to why he was denied parole. (Ex. B at 72-91.) The Board concluded that Petitioner would pose an unreasonable risk of danger to public safety if released from prison: Mr. Carreon was shot five times in the chest, groin, and right arm, and left to die. (*Id.* at 7-25, 72-73.) The Board noted that the motive for the crime – Petitioner's uncontrollable anger from a fight with the victim's brother the night before – was trivial. (*Id.* at 7-25; 73.) In addition to the commitment offense, the Board also denied parole based on Petitioner's failure to adequately participate in self-help and therapy programs for anger management, stress, and substance abuse – all contributing factors to Petitioner attempting to murder Mr. Carreon (*Id.* at 37-47, 50-54, 61-62, 78-88.)

Thus, Petitioner's due process rights were satisfied: he received both an opportunity to present his case before the Board and a reasoned explanation as to why the Board denied him parole. Accordingly, he is not entitled to relief and the petition must be denied.

//
//
//

**B.    The Some-Evidence Standard of Review Is Not Clearly Established Federal Law by the United States Supreme Court in Challenging Parole Denials.**

The some-evidence standard does not apply in federal habeas proceedings challenging parole denials because it is not clearly established federal law. The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly established federal law" refers only to the holdings of the nation's highest court on the specific issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). In *Musladin*, a convicted murderer filed a federal habeas petition after a state appellate court upheld the victim's family members' wearing of buttons with the victim's photograph during the trial, concluding that it was not inherently or actually prejudicial based on two United State Supreme Court cases. *Id.* at 651-52. The Court of Appeals for the Ninth Circuit reversed, finding that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law – the prejudice test in the two United State Supreme Court cases. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court stated that the cases relied on by the Ninth Circuit involved state-sponsored courtroom practices – making a defendant wear prison clothing during trial and seating four uniformed troopers behind a defendant during trial – that were unlike the private action of the victim's family members' wearing of buttons. *Id.* at 653-54. The *Musladin* Court further noted that the two cases were not clearly established federal law on the issue because the United States Supreme Court "has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." *Id.* at 653. Consequently, the Court held that the Ninth Circuit erred by importing a federal test for prejudicial state action in a courtroom to private spectators' courtroom conduct. *Id.* at 654.

Recently, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United States Supreme Court again factually distinguished two of its cases that the Ninth Circuit cited in holding that the state court unreasonably applied clearly established federal law when finding ineffective assistance of counsel claims frivolous. In *Landrigan*, a criminal defendant questioned by the judge told the court that he did not want mitigating evidence presented (his attorney advised otherwise). *Id.* at 1937-38. The United States Supreme Court reasoned that the two

cases relied on by the Ninth Circuit were not clearly established federal law by factually distinguishing them. *See id.* at 1942. The Court noted that one case involved an attorney's failure to provide mitigating evidence and the other case concerned a defendant who refused to help develop mitigating evidence. *Id.*

Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. For instance, in *Foote v. Del Papa*, 492 F.3d 1026 (9th Cir. 2007) the Ninth Circuit affirmed the district court's denial of a petition alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth Amendment. *Id.* at *3-4. Similarly, in *Nguyen v. Garcia*, 477 F.3d. 716 (9th Cir. 2007), the Ninth Circuit upheld the state court's decision – finding that *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state court competency hearing – because the Supreme Court has not held that *Wainwright* applied to competency hearings and thus, was not contrary to clearly established federal law. *Id.* at 718, 727. Finally, in *Locke v. Cattrell*, 476 F.3d 46 (9th Cir. 2007), the Ninth Circuit affirmed the denial of a federal habeas petition based on a proposed violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) concluding that, because no Supreme Court case supported petitioner's claim that his admission to a crime transformed a police interview into a custodial interrogation, the state court's decision denying relief was not unreasonable under AEDPA. *Catrell*, 476 F.3d at 53.

Accordingly, because *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) applied the some-evidence standard to a prison disciplinary hearing and Petitioner challenges his 2006 parole consideration hearing, the some-evidence standard does not apply. Because *Greenholtz* is the *only* United States Supreme Court authority describing the process due at a parole consideration hearing when an inmate has a federal liberty interest in parole, the *Greenholtz* test, not the some-evidence standard, should apply in this proceeding. Regardless, Respondent recognizes that the Ninth Circuit has held otherwise, most recently in *Irons v. Carey*, ___ F.3d ___, 2007 WL 2027359 (9th Cir. July 13, 2007), and will argue this case accordingly.

C.  **The State Court Decision Upholding the Board's Parole Denial Was a Reasonable Application of Clearly Established Federal Law.**

Assuming Petitioner has a federally protected liberty interest in parole, and if the "minimally stringent" some-evidence standard is applicable, then the requirements of due process are satisfied if there is "any evidence in the record that could support the conclusion reached by the board." *See Hill*, 472 U.S. at 455-56 (applying some-evidence standard to prison disciplinary hearing). The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Id.* at 457. Thus, both the "reasonable determination" standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

When, as here, the California Supreme Court denies a petition for review without comment, the federal court will look to the last reasoned decision as the basis for the state court's judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). In this case, the last reasoned decision is the Los Angeles County Superior Court's January 19, 2006 decision denying Petitioner's habeas claim. (Ex. F.) The court found that Petitioner's commitment offense and failure to sufficiently participate in self-help and therapy programs was some evidence to deny Petitioner parole. (*Id.*) The court concluded that the Board properly found that Petitioner's positive behavior did not outweigh the factors of parole unsuitability. (*Id.*) As these findings were a reasonable application of the *Hill* some-evidence test, Petitioner's claim must fail.

Petitioner argues that due process precludes the Board from relying on the circumstances of the commitment offense to deny parole. This argument fails for a number of reasons. First, reliance on the commitment offense is not be contrary to any clearly established United States Supreme Court law. *Andrade*, 538 U.S. at 73.

Second, *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) does not compel a different result. In *Biggs*, the Ninth Circuit stated that the Board's continuing reliance on an unchanging factor to deny parole "could result in a due process violation." *Id.* at 917. However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due

process, only that it possibly could. Indeed, the court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole—which relied solely on the commitment offense—was supported by some evidence. Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly established federal law sufficient to overturn a state court decision under AEDPA standards. *See Crater v. Galaza*, 491 F.3d 1119, 1126, fn. 8 (9th Cir. 2007) (circuit court decisions are not controlling under AEDPA).

The Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The *Sass* court rejected the argument that the Board's reliance on "immutable behavioral evidence" to deny parole violated federal due process.[4] Moreover, the Ninth Circuit again recently revisited this issue in dicta in *Irons*, holding that despite "substantial" evidence of rehabilitation, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Irons*, *supra*, ___ F.3d ___, 2007 WL 2027359 at *4-5, *6.

Finally, California law allows the Board to rely on the commitment offense in denying parole: California Penal Code section 3401(b) requires that the Board examine the commitment offense; and the California Supreme Court held in *Dannenberg* that the Board may heavily rely on the circumstances of the commitment offense. *Dannenberg*, 34 Cal. 4th at 1094.

Thus, the Board is not precluded from using circumstances of the commitment offense to deny parole. Because Petitioner has failed to prove that the state court decisions were contrary to AEDPA standards, his claim must be denied.

---

4. This Court has also recognized that the Board may properly rely on static factors to deny parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. California's parole scheme does not offend due process by allowing the [Board] to predict that an inmate presents a present danger based on a crime he committed many years ago." *Hill v. Kane*, 2006 WL 3020923 at *3 (N.D. Cal. Oct. 26, 2006) (citations omitted).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          Castaneda v. Curry
                                                                   C 07-3726 WHA (PR)

### D. The State Court Decision Upholding the Board's Parole Denial Was a Reasonable Interpretation of the Facts in Light of the Evidence Presented.

The second standard under AEDPA is that a state court habeas decision must be based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). AEDPA defers to state courts, indicating that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Additionally, Petitioner bears the burden of proof on this prong, and he must show that the state court's factual determinations were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). However, Petitioner fails to prove that the state court's factual determinations were objectively unreasonable.

Here, the state court properly found that some evidence supported the Board's determination that Petitioner was unsuitable for parole. (Ex. F.) The Board relied on the facts of the crime set forth in a prior parole consideration hearing (taken from a probation officer's report) and on Petitioner's testimony in concluding that he continued to be a danger to society if released from prison and that the motive for the crime – Petitioner's uncontrollable anger – was trivial. (Ex. B at 7-25, 72-73.) Additionally, the Board relied on documents in Petitioner's central file and his testimony regarding the commitment offense, his limited participation in vocational programs and self-help activities, psychological evaluations, and his parole plans should he be released in denying him parole. (*Id.* at 7-55.)

Accordingly, the findings of the state court are both supported by the record and a reasonable interpretation of the evidence presented. Petitioner fails to prove that the state court's factual determinations were unreasonable. As such, the state court's denial of habeas relief meets the AEDPA standards, and there is no basis for this Court to overturn the decision. The petition for writ of habeas corpus should be denied.

### CONCLUSION

Petitioner's disagreement with the Board's parole denial does not entitle him to a writ of habeas corpus. Rather, he must prove that the state court decisions denying him relief are contrary to, or an unreasonable application of, clearly established federal law, or that the

1  decisions involved an unreasonable determination of the facts. Petitioner fails to meet this
2  burden. First, Petitioner received all process due under *Greenholtz*, the only clearly established
3  federal law specifying due process required at parole hearings. Second, the state court decision
4  denying Petitioner's parole does not involve unreasonable factual determinations; indeed, some
5  evidence supports the Board's parole denial. Third, Petitioner's argument that the Board
6  improperly relied on his commitment offense in denying parole is untrue. Moreover, such
7  reliance would not be contrary to any clearly established United States Supreme Court law. For
8  these reasons, the petition for writ of habeas corpus must be denied.

Dated: September 20, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMANDA J. MURRAY
Deputy Attorney General
Attorneys for Respondent

20104736.wpd
SF2007200591

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

Castaneda v. Curry
C 07-3726 WHA (PR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Castaneda v. Curry**

No.:   **C 07-3726 WHA (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **September 20, 2007**, I served the attached

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Martin Castaneda**
**E-89355**
**Correctional Training Facility**
**P.O. Box 689**
**Soledad, CA 93960-0689**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **September 20, 2007**, at San Francisco, California.

|  |  |
|---|---|
| M.M. Argarin | *[signature]* |
| Declarant | Signature |

20105298.wpd