# EXHIBIT C

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
FEBRUARY 2003 CALENDAR

CASTANEDA, MARTIN                                                           E89355

I.  **COMMITMENT FACTORS:**

    A.    **Life Crime:** Attempted Act of Murder 1st Degree, 664 / 187 (a), with enhancements for 12022.5 P.C. Use of Firearm and 12022.7 P.C. Great Bodily Injury. Los Angeles County Case #KA005779, Count 1, sentenced to 7 years to Life. The five year enhancement for PC 12022.7 P. C. were ordered to run concurrently with Count 1 (Life crime). Victim: Fidel Carreon, age unknown. MEPD: 3/21/98. Receive into CDC: 3/21/98.

        1.    **Summary of Crime:** On 10/8/90, Castaneda, apparently had a physical altercation with the victim's brother, Jorge Carreon, over his ex-girlfriend. The victim, Fidel Carreon, intervened and broke up the altercation. As Castaneda was leaving the location, he yelled out, "Varrio Azusa" and "I'll be back."

            On 10/9/90, at about 8:41 p.m., Castaneda and unknown companions drove his vehicle to the victim's residence located at 500 North Virginia Avenue in the City of Azusa. Therefore, witnesses observed Castaneda and his companions to leave the vehicle and walk up to the victim's house. Finding the victim outside, Castaneda displayed a handgun and shot the victim five (5) times in the chest, groin and right arm areas. Castaneda and his companions then fled the location.

        2.    **Prisoner's Version:** In an interview for this report, Castaneda indicated that he didn't give his version of the crime for his 7/2001 Board Hearing because he requested a postponement of his Parole Consideration Hearing. He states due to the litigation pending in court and a court ruling on the evidentiary hearing on his writ of habeas corpus based on the BPT decision consideration hearing of July 21, 1999. However, Castaneda stated that his version of the crime remains the same as that provided for his 2/97 Subsequent Parole Consideration Hearing. In that report, Castaneda stated, "The incident was not planned. The night of the incident, I was at my home with some friends having a party. Ms. Lisa Luera and a female friend (Gloria) arrived at my home in the early morning hours with the intention that I spend the night with her at a motel

COPY TO INMATE ON 6-25-03

CASTANEDA, MARTIN          E-89355                         CTF-SOLEDAD          FEB/2003

she had rented earlier. I declined to go with her. After a short argument and a fight between Ms. Luera and one of my female guests (Sharon Gomez), Gloria decided to leave without Ms. Luera. I asked Ms. Luera to leave, and she stated she needed a ride. I offered her a ride, which she accepted. I dropped her off at where she said her cousin lived. I then left the residence and was driving back home when I ran out of gas. I returned to the home where I had dropped off Ms. Luera and asked to borrow a gas can. When I arrived at the residence I called out for Ms. Luera to come out. At that time a Mexican male occupant came out and asked me what I wanted. I said that I wanted to speak to Ms. Luera because I had run out of gas. The man told me that Ms. Luera wasn't there. After a few minutes of arguing, I told the man that I didn't want any trouble. The man jumped over the chain-linked fence and started fighting with me.

While defending myself, I noticed another male occupant came out of the residence and he began attacking me. After about five to ten minutes, Ms. Luera came out of the residence and yelled, "OK! I'll give him a ride to get some gas." I told Ms. Luera it was too late. She ran back into the house. I ran from the two occupants. After what I thought was a safe distance, I started walking backwards making sure that no one was following me. At that time, one of the occupants ran towards the back into the residence and within a matter of several seconds he returned firing a weapon several times at me. He started running towards me, so I turned around and started running up the street towards my residence, which was about 30 minutes away on foot, leaving my car unattended. I arrived at a friend's house about five blocks away. I got enough gas to get home. I arrived home at about 2:45 a.m. I drank heavily throughout the night because of the pain and swelling from the fight. In the morning, still intoxicated and angry that these two individuals attacked me, I left the house to get some more gas for my car. Along the way, the car ran out of gas again. Two of my friends helped me push the car to the gas station. I drove by the house where the fight took place and one of them (Fidel Carreon) was outside watering the grass. I stopped the car around the block and told my friend to drive. I walked up to Fidel and asked him why his brother (Jorge) jumped me and then fired shots at me. I told Fidel I wanted to talk to the other guy. I pulled out a gun from my pocket and fired several shots at him, ran to the car and left the scene.

In conclusion, let me state that I am truly sorry, and I make no excuses for my actions. I take full responsibility for my mistakes."

3.    **Aggravating/Mitigating Circumstances:**

    a.    **Aggravating Factors:**

CASTANEDA, MARTIN    E-89355    CTF-SOLEDAD    FEB/2003

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
FEBRUARY 2003 CALENDAR

- The victim was particularly vulnerable.

- During the commission of the crime, the prisoner had a clear opportunity to cease but instead continued.

- The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime.

- The crime, involving five bullet wounds to the victim, exhibited viciousness, cruelty, and callousness.

  b. **Mitigating Factors:** There are no mitigating circumstances.

B. **Multiple Crime(s):**

  1. **Summary of Crime:** N/A.

  2. **Prisoner's Version:** N/A.

II. **PRECONVICTION FACTORS:**

A. **Juvenile Record:** None.

B. **Adult Convictions:**

  2/25/82 Arrested by Glendora PD for PC 496 Receiving Stolen Property; conviction: 4/20/82 as a misdemeanor PC 496, 12 months probation.

  8/21/88 Arrested by Azusa PD for PC 12020(A) Possession of a Dangerous Weapon; conviction 10/21/88 as a misdemeanor, one year probation.

  10/9/90 Arrested by Azusa PD for PC 187 Murder - Attempted (Life crime); conviction, guilty plea entered 3/12/91, committee to CDC on 3/21/91.

C. **Personal Factors:** Castaneda was born on 5/20/62 [handwritten correction: 4/20/62] to his parents Manuel and Phyllis Castaneda. Castaneda and his four brothers had an apparently reasonable normal home life in the San Gabriel Valley area. He was married to Debbie Castaneda, with four children from this marriage, at the time of the Life crime.

CASTANEDA, MARTIN  E-89355  CTF-SOLEDAD  FEB/2003

They had separated in 11/90. He was a member of the Sureno Azusa 13 gang at the time of the commitment offense. There is no history of military, or employment history.

III. **POSTCONVICTION FACTORS:**

A. **Special Programming/Accommodations:** Castaneda is not disabled as defined per ADA.

B. **Custody History:** Castaneda was received by CDC at the California Correctional Institution Reception Center III (CCI-RC) on 3/21/91 for his initial processing. He transferred to Pelican Bay State Prison Level IV (PBSP) on 5/1/91. He received his Initial Classification on 5/8/91, his custody was Close "A" and he was placed on the ABE-II waiting list. On 8/28/91, U.C.C. elected to place the prisoner on the Support Services waiting list. On 9/13/91, U.C.C. elected to reduce the prisoner's custody from Close "A" to Close "B" to comply with the CDC's Operational Manual (DOM), Section 62010.7.3. He was assigned as a Sculley worker on 9/28/91 pending assignment in ABE II. Work Supervisor's Report noted satisfactory to above average work grades. On 3/24/92, U.C.C. elected to raise the prisoner's custody to Close "A" based on substantial information in his file to adequately support a past history of involvement in violent activities while incarcerated. This information consists of a confidential memo dated 8/12/91 documenting Street Gang Association (AZUSA 13). At PBSP Facility "A" had an on-going management problem with inmates of Hispanic background. Castaneda's case was reviewed on 6/26/92, by U.C.C. and referred to the CSR with a recommendation for a transfer to RJD with an alternate WSP-III. Rationale for a transfer was that the prisoner was out of level and he was requesting a transfer to an institution that was closer to his family. Committee elected to reduce his custody to Close "B" and place on the Educational waiting list for ABE II. The prisoner was endorsed for COR-III on 7/16/92 by the CSR. He was subsequently placed in Ad Seg on 7/13/92 for being suspected of involvement in he Stabbing Assault of Inmate Del Toro C-89545. On 7/23/92, Castaneda appeared before Ad Seg ICC for his Initial Ad Seg review. I.C.C. elected to rescind the CSR endorsement of 7/16/92 to COR-III. I.C.C. elected to establish the prisoner's custody at MAX "A". On 8/20/92, I.C.C. reviewed the CDC 115, dated 7/13/92, Log #B92-07-0056, and elected to dismiss the CDC 115 in the interest of justice, as the findings did not substantiate the charges. I.C.C. noted that the prisoner was endorsed to COR-III, by the CSR of 7/16/92. Casteneda's transfer to COR-III remain pending and I.C.C. elects to retain the prisoner in Ad Seg. He transferred to CSP Corcoran on 9/2/92 for Level III placement as a non-adverse transfer. He received his Initial Classification on 9/3/92 and placed on the Institutional Support as a priority hire and ABE-II waiting lists. His custody was established at Close "B". He was assigned to the

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
FEBRUARY 2003 CALENDAR

Yard Trash Clean Up Crew on 10/20/92. He received satisfactory work grades on his Work Supervisor's Work Reports dated 10/20/92. On a CDC 101 dated 12/2/92, Castaneda received below average to satisfactory work grades. Later, he improved his work performance by receiving satisfactory work grades on a CDC 101 dated 1/23/93. Castaneda received an Annual Program Review on 6/10/93. U.C.C. elected to refer his case to the CSR recommending a transfer to LAC III to facilitate family visiting with an alternate institution WSP-III. U.C.C. acknowledged that Castaneda passed his GED (General Education Development) test on 4/15/93 and therefore, elected to place him on the Institutional Support Waiting list and retain his status assignment until he is reassigned. Castaneda was endorsed for LAC-III on 6/30/93. On 12/17/93, his case was reviewed due to a work credit time gap of 10/22/93 and pending reassignment. Castaneda was inappropriately placed in a job assignment on Close "B" status. He continued A1A status and was unassigned (non-adversely). On 1/4/94, he received his Initial Review at LAC III. U.C.C. elected to reduce his custody to Medium "A" and placed him on the Support Services and Vocational Upholstery Waiting lists. On 1/27/94, he was reassigned to Culinary assignment. There are no Supervisor Work Reports in the file noting work performance. On 3/17/94, he was reassigned to the Vocational Auto Upholstery. He earned satisfactory work grades. On 4/1/96, Castaneda successfully completed the Vocational Upholstery Trade by earning a A+ grade and was terminated from the program on 3/13/96 as reflected on a CDC 128-Education Progress Report. On 6/7/94, Castaneda received his Annual and Post Board Review. Committee referred his case to the CSR recommending a transfer to CMC-East III with an alternate of RJD-III. Rationale for a transfer is unknown per a CDC 128G dated 6/7/94). Castaneda appeared before BPT on 5/17/94 for his Initial Hearing. The Board recommended that the prisoner remain disciplinary-free, participate in self-help group therapy due to his history of alcohol. On 11/9/94, U.C.C. conducted a program review and notes that the prisoner completed the Vocational Auto Upholstery assignment and elected to remove him from his position and place him on the Furniture Upholstery course and Support Services waiting lists. On 11/10/094, he was reassigned to the B yard work crew where he earned above average work grades. On 3/14/96, the prisoner was reassigned to the Facility "A" Porter position. On 7/3/96, he was assigned to the Culinary as a line backer where he has received satisfactory work grades. On 3/12/96, U.C.C. conducted an Annual Review and elected to refer to the CSR recommending a transfer to CTF-II and per the inmates request due to being a Lifer and where he prefers cell living and to pursue sewing machine repair and with an alternate of CCI-II. Committee also elected to place him on the Support Services waiting list. On 4/3/96, the CSR endorsed the prisoner for CTF-II per a CDC 128G. Castaneda was received at the Correctional Training Facility on 5/8/96. He received his Initial Classification on 5/16/95. Committee elected to remove the prisoner from RTQ status, and place on the Support Services, Textiles and Drafting waiting lists and release to the general population Central or North Facility. He was subsequently transferred to CTF

CASTANEDA, MARTIN        E-89355                CTF-SOLEDAD            FEB/2003

North Facility on 5/17/96. On 5/24/96, at his Initial Classification, U.C.C. elected to remove the prisoner from RTQ status, established custody at Medium A and was placed on the Vocational Upholstery and Support Services waiting lists.

He was assigned to Whitney Hall as a porter on 6/15/96. There are no work grades noted in the Central File. He was reassigned to the Culinary on 7/3/96 as a line backer. He received satisfactory work grades as reflected on his Work Supervisor's Report. Casteneda appeared before BPT on 5/1/97. The Board denied his parole for two (2) years and recommended the following: remain disciplinary-free; upgrade educationally and participate in self-help therapy. On 6/17/97, per a CDC 128G, the CSR endorsed the prisoner to be retain at CTF II due to his Lifer status noting CCI-II and CMC-II institutions were closed to intake. Castenda continued his Culinary (cook) assignment. He received above average work grades from 4/1/98 to 4/4/00 according to his Work Supervisor Reports. At this Annual Review on 1/26/99, Committee elected to drop the prisoner from the Vocational Upholstery due to receiving a certificate of completion in upholstery. On 7/21/99, the prisoner received a Post Board Review. The Board decision was to deny parole for two (2) years. The Board made the following decisions and recommended that he remain disciplinary-free, upgrade vocationally and participate in self-help and therapy programs. On 5/3/01, at his Annual Review, Committee elected to place the prisoner on the East Dorm waiting list and continue his Culinary assignment. On 10/17/01, he requested a postponement of his subsequent hearing #2 dated 11/29/01 based on the Board of Prison Terms decision of denying two (2) year denial of parole at his hearing on 7/21/99. He states that the board did not follow the guidelines and violated the Establishment Clause by requiring him to participate in a 12-Step Program to be found suitable. He requested six months postponement in that he anticipated a favorable decision from the court with instructions to the BPT on this issue. Castaneda continued his work assignment in the Kitchen Mess Hall as a Scullery Worker. He received exceptional work grades as documented on his CDC 101 Work Supervisor's Report dated 11/27/01. He received a CDC 128B Laudatory chrono dated 11/27/01 which documents his ability to adapt to whatever work situation while assigned to the Culinary. On 4/18/02, U.C.C. elected to continue the prisoner' program (Culinary) and recommended a transfer to CTF Central and per the inmate's request due to North Facility mission change to a Level III. On 4/21/02, Castandeda was moved non-adversely from North to Central Facility and was subsequently housed at the P.I.A. East Dorm. Castandeda was assigned to the P.I.A. Wood Furniture Factory per CDC 101 Work Supervisor's Report. He earned satisfactory work grades as indicated per a CDC 101's dated 7/1/02 and 9/1/02. He received six (6) CDC 128B's dated 5/17/02 for Hazardous Material Standard Training - Right to Know". Additional training included safe handling and disposal of Hazardous Material and Waste, Back Safety, Air, Eyes and Sound, Lockout/Tagout; Material Safety Data Sheets (Right to Know); and General Safety. He also received additional CDC 128

Training Certification Chronos dated 6/19/02 for Edge Bader; Glue Press; Glue Spreader; Panel Saw; and Portable Hand Router.

On 8/29/02, Castaneda requested a 90 day postponement, due to the fact that he was awaiting a ruling by Monterey Superior court regarding his BPT suitability. On 9/18/02, BPT postponed Castaneda's hearing based on good cause on the reasons by the attorney's request, updated Board Report and full psychiatric report.

A review of the Central file reflects no educational and vocational upgrading experience since his last Board hearing.

C. **Therapy and Self-Help Activities**: He received a CDC 128B dated 11/25/01 which notified him of his status on the IMPACT waiting list. Participated in the Project C.H.A.N.G.E. program per a CDC 128B dated 5/26/02. Castandeda completed a 44 week course in Anger Management. The course consist of a study which includes: self-esteem and assertiveness, goal setting, anger management, coping skills, stress reduction, tolerance, parenting, domestic violence, life skills, and parole and release plans. Instructors comments: Castaneda is to be commended for using his spare time to better himself and has received a certificate of completion for this course. He was awarded a Diploma of Graduation certificate.

D. **Disciplinary History**: None during this rating period. However, on 2/28/00, Casteneda received one (1) Serious CDC 115 for "Refusing to work on a regular day off during a lockdown." He received three (3) CDC 128A's dated 4/7/95 for Failing to Respond to a Medical Ducat; on 12/28/92 for Playing Basketball and Lifting Weights while assigned to the Yard Crew RDO Rover and on 10/18/95 Contraband - Clothes Hooks.

E. **Other:** On 2/28/03, Castanededa appeared before the Board of Prison Terms for his Subsequent Parole Consideration Hearing #2. The Board postponed the hearing due to the absence of a board report or addendum since year 2001.

IV. **FUTURE PLANS:**

A. **Residence:** In an interview for this report, Castaneda stated that should he receive a parole date, he plans to live with his parents, Manuel and Phyllis Castaneda, at 303 South Vernon, Azusa, California 91702; telephone: (626) 334-4252. He indicated to this writer that he has received strong support from his entire family and expects that to continue when he will be released. He also plans to continue the parental relationship and his wife and four children.

B. **Employment:** He plans to seek employment in the auto and furniture upholstery field. He states that he inherited upholstery tools from a former father-in-law in order to start a business of his own. He received two (2) Certificates of Achievement in Vocational Upholstery Repair and Auto Upholstery. He will, however accept any legitimate employment to support himself until he can pursue his business goals.

C. **Assessment:** Castaneda earned his G.E.D. and acquired his high school equivalency certificate. He completed a certificate of achievement in Vocational Upholstery Repair and Auto Upholstery. However, he claims no confirmed job offers at this time.

V. **USINS STATUS:** None.

VI. **SUMMARY:**

A. Considering the commitment offense, prior record and prison adjustment, this writer believes that the prisoner would probably pose a moderate degree of threat to the public at this time, if released from prison. This impression is based on Castaneda's disciplinary-free behavior since 02/28/00 and minimal participation in self-help group and therapy programs during this period. However, he is to be commended for completing a 44 week course in Anger Management, which he was awarded a Diploma of Graduation certificate. Since his last scheduled Board calendar dates 7/99 and 7/2001, Castaneda has not upgraded academically and vocationally in order to acquired a marketable skill and to prepare himself to work in today's society's work force. When discussing the Life crime, Castaneda expressed remorse for the victim and takes full culpability for shooting the victim. He recants his early statement in the probation officer's report, when he related to the detectives that he would do the same thing under similar circumstances, except that he would only use a bigger gun the next time. He stated that he vowed never to pick up a gun of any kind again. He now understands, due to a callous decision he made at that moment, he is dealing with the circumstances of his actions. Castaneda now believes at this point he would now take the beating, abstain from drinking alcohol and continue to seek therapy as a life long commitment in order to cope with street due to his impulsive behavior.

B. Prior to release the prisoner could benefit from remaining disciplinary-free, upgrade vocationally, participate in self-help and therapy programs such as Anger management Control classes in order to face, discuss, understand and cope with stress in a nondestructive manner.

CASTANEDA, MARTIN          E-89355                    CTF-SOLEDAD               FEB/2003

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
FEBRUARY 2003 CALENDAR

C. This Board Report is based upon a thorough review of the Central file and an Interview with Castaneda. Castanda reviewed his Central File on 4/16/03 per CDC 128B pursuant to the Olson Decision.

D. No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

CASTANEDA, MARTIN     E-89355                CTF-SOLEDAD              FEB/2003

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
FEBRUARY 2003 CALENDAR

_____    5-20-03
H. Staten                                              Date
Correctional Counselor I


_____    5-30-03
W. Stewart                                          Date
Correctional Counselor II


_____    5-30-03
L. Trexler                                            Date
Facility Captain


_____    6-3-03
D. S. Levorse                                      Date
Classification and Parole Representative


CASTANEDA, MARTIN          E-89355                    CTF-SOLEDAD                    FEB/2003