# EXHIBIT F

**FILED**

Los Angeles Superior Court

JAN 1 9 2007

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

JOSEPH M. PULIDO, S.C.C.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| In re,<br><br>MARTIN CASTANEDA,<br><br>       Petitioner,<br><br>       On Habeas Corpus | Case No.: BH004094<br><br>ORDER RE: WRIT OF<br>HABEAS CORPUS |

The Court has read and considered the Petition for Writ of Habeas Corpus filed on June 30, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the BPT's finding that petitioner is unsuitable for parole. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 658; *see* Cal. Code Regs., tit. 15, §2402.)

The record reflects that the Board found petitioner unsuitable for parole after a parole consideration hearing held on March 15, 2006. Petitioner challenges the Board's finding of unsuitability.

Petitioner was convicted of attempted murder in 1991 and was sentenced to a term of 7 years to life, with a minimum eligible parole date of March 21, 1998.

Petitioner was involved in a fight with the victim, Fidel Carrion, and his brother. The next day, petitioner was angry and sought retribution for the attack. He was apparently drunk, and returned to the location where the victim lived. Petitioner fired his shotgun seven times. The

1  victim was shot five times, sustaining gunshot wounds in the arm, chest and groin area. The

2  victim survived his injuries.

3      The Board concluded that petitioner was not yet suitable for parole and would pose an

4  unreasonable risk of danger to society or a threat to public safety if released from prison. The

5  Board based its decision on several factors, including petitioner's failure to sufficiently

6  participated in self-help and therapy programs. The Board recommended petitioner attend AA

7  and anger management classes.

8      The Board's finding of unsuitability is supported by "some evidence." (*In re*

9  *Rosenkrantz* (2002) 29 Cal.4th 616, 678-679, 682-683; *In re Dannenberg* (2005) 34 Cal.4th 1061,

10  1070-1071) In addition to the commitment offense, the record reflects that the Board relied on

11  several additional factors in denying petitioner parole at this time, and there is some evidence to

12  support that decision. (*In re Rosenkrantz*, 29 Cal.4th at 664-665; *In re Dannenberg*, 34 Cal.4th at

13  1071, 1081.) Although the Board commended petitioner for the positive aspects of his behavior,

14  especially his lack of a significant disciplinary record during his incarceration, they found that

15  his positive behavior did not yet outweigh the factors of unsuitability.

16      Petition for writ of habeas corpus is denied.

17

18

19  January 19, 2007



20      STEVEN R. VAN SICKLEN
        Judge of the Superior Court

21

22  The clerk is to give notice.

23

24

25

26

27

28

MC-275

Name  MARTIN CASTANEDA,

Address  CORRECTIONAL TRAINING FACILITY

P. O. BOX.  0689, EAST DORM 149U

SOLEDAD, CA  93960-0689

CDC or ID Number  E-89355

RECEIVED

JUN 2 8 2006

EAST DISTRICT

FILED
Los Angeles Superior Court

JUN 3 0 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

(Court)

MARTIN CASTANEDA,

Petitioner

vs.

SUSAN FISHER, Chairman, BPT

Respondent  B. CURRY, Warden, and
ARNOLD SCHWARZENEGGER, Governor

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60[a]

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

[X] A conviction                    [ ] Parole

[X] A sentence                      [ ] Credits

[ ] Jail or prison conditions       [ ] Prison discipline

[X] Other (specify): PLEA BARGAIN AGREEMENT

1. Your name: MARTIN CASTANEDA

2. Where are you incarcerated? CORRECTIONAL TRAINING FACILITY, IN SOLEDAD, CA 93960-0689

3. Why are you in custody? [X] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      ATTEMPTED MURDER,

   b. Penal or other code sections: 664/187(a)

   c. Name and location of sentencing or committing court: SUPERIOR COURT OF CALIF. COUNTY OF L. A.

      400 CIVIC CENTER PLAZA POMONA, CALIF. 91766

   d. Case number: KA005779

   e. Date convicted or committed: MARCH 12, 1991

   f. Date sentenced: MARCH 12, 1991

   g. Length of sentence: 7-to life with the possibility of parole. TO BE DETERMINED BY COURT.

   h. When do you expect to be released? MINIMUM ELIGIBILITY DATE OF MARCH 21, 1998

   i. Were you represented by counsel in the trial court? [X] Yes.   [ ] No. If yes, state the attorney's name and address:

      ANTHONY ROBUSTO

      1135 EAST ALOSTA AVE. SUITE # 203 GLENDORA, CALIF. 91740

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Nolo Contendere   [X] Other: UNDER PLEA BARGAIN AGREEMENT.

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE ATTACHED WRIT OF HABEAS CORPUS, DATED JULY 1, 2006

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

SEE ATTACHED WRIT OF HABEAS CORPUS.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

SEE ATTACHED WRIT OF HABEAS CORPUS.

7. **Ground 2 or Ground** _____ *(if applicable):*

SEE ATTACHED WRIT OF HABEAS CORPUS.

a. Supporting facts:

SEE ATTACHED WRIT OF HABEAS CORPUS.

b. Supporting cases, rules, or other authority:

SEE ATTACHED WRIT OF HABEAS CORPUS.

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____ c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

   (2) _____

   (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No. If yes, give the following information:

   a. Result: _____ b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: N/A

    _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

       N/A

       _____

       _____

       _____

       _____

       _____

       _____

       _____

    b. Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this **conviction,** **commitment, or issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, **skip to number 15.**

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable)*: _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result *(Attach order or explain why unavailable)*: _____

    (5) Date of decision: _____

  c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☐ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: COURT HAS JURISDICTION IN THIS MATTER.

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: JULY 1, 2006                    *Martin Castaneda*
                                      (SIGNATURE OF PETITIONER)

1  MARTIN CASTANEDA,
   E-89355, ED149U
2  P. O. BOX.  0689
   SOLEDAD, CA  93960-0689
3  In Pro. Se.

4

5

6                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                    IN AND FOR THE COUNTY OF LOS ANGELES

8

9

10  MARTIN CASTANEDA,                    )    Case No. _____

11  Petitioner,                          )

12    -V-                                )
                                         )    PETITION FOR WRIT
13  SUSAN FISHER, Chairman, BPT,         )    OF HABEAS CORPUS.
    B. CURRY, Warden, and               )
14  ARNOLD SCHEWARZENEGGER, Governor,    )

15  Respondets.                          )

16      COMES NOW, Petitioner Martin Castaneda, and admits for purposes of this

17  action only the allegations that he was convicted of the listed offenses,

18  (Penal Code section 664/187(a), "Attempted Murder." However,, denies that

19  his continued incarceration is at all proper and or legal., as more fully

20  detailed herein.

21      Petitioner further admits that through 'plea agreement', he pled guilty

22  and was sentenced to State Prison for a term of 7-Years-to-Life, with the

23  possibility of parole, with a Minimum Eligibility Parole Date, (MEPD) of

24  March 21, 1998.

25      Petitioner admits that he was denied parole at a suitability hearing on

26  March 15, 2006, and that the denial was for a period of one year.

27  Petitioner further admits that the denial was based upon, primarily, the

28  'commitment offense', and a 'need for some sort of Self-Help.'

                                    (1)

1    WHEREFORE, Petitioner Admits, Denies and Alleges as follows:

2                                  "I"

3    Petitioner alleges that the Board, failed to give his case 'due

4    consideration', and that the denial was based upon the Board's general

5    policy against granting parole.

6                                  "II"

7    Petitioner alleges that the Board, Panel denying parole was bais.

8                                  "III"

9    Petitioner alleges that the Board violated Penal Code § 3041, when it

10   failed to set his parole date.

11                                 "IV"

12   Petitioner alleges that Habeas Corpus is the proper vehicle to obtain a

13   declaration of his rights, and of other indeterminately sentenced prisoners,

14   particularly in light of the Board's policy and practice against granting

15   parole. Petitioner specifically alleges that his multiple parole hearings

16   have become a 'sham', and that the Board violates his State and Federal

17   Constitutional Rights to Due Process by denying him parole.

18                            "INTRODUCTION"

19   Petitioner, through 'plea agreement', pled guilty to the "Attempted

20   Murder", of Fidel Carrion, on October 9, 1990, (Penal Code section

21   664/187(a)), and was sentenced to State Prison for a term of 7-years-to-

22   life, with the possibility of parole.

23   NEVERTHELESS, like all prisoner's sentenced to life with the possibility

24   of parole, he is entitled to have his suitability for parole duly considered

25   by the Board. In this case, the Board based it's parole denial based upon:

26   (1). "Commitment Offense"; (2). "A need for some sort of Self-Help."

27   Specifically the panel stated: "the inmate is not yet suitable for parole

28   plus a danger to society if released from prison. As it regards the

1   commitment offense and this was the intent to murder of Fidel Carrion on

2   October 9, 1990 in the City of Isuza. the (Indiscernible) carried out in a

3   (indiscernible) manner involved the inmate (indiscernible), apparently been

4   got into a fight with the victim and his brother the night before and the

5   inmate was very - became very angry and wanted retribution for this attack.

6   He apparently had drank a lot which festered his anger and went back to the

7   location where the victim lived with a shotgun and proceeded to shoot the

8   gun seven times." (See Attached Hereto, Marked As Exhibit "A", p. 72, L.'s

9   12-26.) The Board, panel further stated: "(indiscernible) and we find that

10  you continue to need self-help in order to face, discuss, and understand and

11  cope with stress (indiscernible) and conflict in a non-destructive manner."

12  (See Attached Hereto, Marked As Exhibit "A", p. 76, L.'s 5-8).

13                            "ARGUMENT"

14      However, the administrative record does not support these findings. The

15  Board failed to demonstrate why Petitioner 'currently' presents an

16  unreasonable risk to public safety. After all, California's parole scheme

17  "creates a presumption that parole will be granted" in most cases.

18  (McQuillion, 306 F. 3d 895 (9th Cir. 2002). Parole can only be denied if

19  the prisoner currently presents an unreasonable risk of danger to society if

20  released from prison. (Cal. Code Regs., tit., 15, § 2402, subd., (a).)

21  Absent evidence to support such a finding, Petitioner must be paroled.

22      The Board's conduct clearly illustrates it's reluctance to follow the

23  law. The Board has once again demonstrated it's refusal to follow statutory

24  mandate that parole must normally be granted. (Pen., Code § 3041), and has

25  instead carried out it's policy against granting parole dates to those

26  convicted to life with the possibility of parole. The Board's policy

27  against granting parole cannot genuinely be disputed. Both the Board's

28  actual bias and appearance of bias preclude any finding that the Board is

impartial. The Board did not and will not give Petitioner due consideration of his suitability for parole unless and until the Board begins to follow the law and grant parole in the normal course of business. It is meaningless for the Board to continually deny Petitioner parole because of the 'commitment offense', and because Petitioner 'needs further self-help in order to face, discuss, and understand and cope with stress (indiscernible) and conflict in a non-destructive manner.' Instead, the Board must consider Petitioner's suitability for parole by considering other information, such as Petitioner's maturity, institutional conduct, and psychological evaluations prepared about him. A consideration of relevant and reliable information regarding Petitioner's suitability for parole, which requires that the Board grant Petitioner parole and set his release date.

California Penal Code section 3041, subdivision (a) provides:

> "One year prior to the inmate's minimum eligible parole release date a panel...shall again meet with the inmate and shall normally set a parole date...The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public...(b) The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offense, or timing and gravity of current or past convicted offense, or offense, is such that consideration of the public requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this hearing. (Emphasis added.)

The release date must be set in a manner that will provide uniform terms for offense of similar gravity and magnitude to their threat to the public. (Pen., Code § 3041, subd., (d).) A life prisoner must be parole when his or her release would not pose a danger to the public. The Board's own regulations make this criterion more specific. The panel can deny parole only if, "the prisoner will pose an unreasonable risk of danger to society if released from prison." (Cal. Code Regs., tit., 15, § 2402 subd., (a).) The regulations set forth special criteria to determine whether under this

1    standard a prisoner is suitable for parole:

2          Circumstances tending to show unsuitability include,
      "that the offense was committed in an especially heinous,
3      atrocious or cruel manner, that the prisoner has a previous
      record of violence, an unstable social history, prior sex
4      assaults, a lengthy history of severe mental problems or
      that he has engaged in serious misconduct in prison. (Cal.
5      Code Regs., tit., 15, § 2402, subd., (c).)  Suitability for
      parole is proven if the prisoner does not have a juvenile
6      record, he or she has a stable social history, he or she
      exhibits signs of remorse, the crime occurred as a result of
7      a significant long-term stress, he or she is older, has
      realistic parole plans and has positive accomplishments in
8      prison that will enhance his or her ability to function upon
      release. (Cal. Code Regs., tit., 15, § 2402, subd., (d).)"

9

10    The Board has established regulations for setting a prisoner's base term

11    of confinement after it finds him suitable for parole. (Cal. Code Regs.,

12    tit., 15, § 2402.)  The regulations are commonly referred to as the

13    "Matrix."  For a prisoner convicted of "Attempted Murder", in which the

14    prisoner had no prior relationship with the victim, regulations require that

15    the Board set a base term of either 10, 11, and or 12 years. (Cal. Code

16    Regs., tit., 15, § 2403, subd., (d).)  Depending on the circumstances in

17    mitigation and or aggravation, including the application of (60) months of

18    post conviction credits, (Cal. Code Regs., tit., 15, § 2410, subd., (a),

19    Petitioner has served well over 21-years '+' on the 7-to-life-term.  The

20    Board has not advanced any reason, nor is there one in the record for

21    exceeding the term prescribed by the matrix.

22    The Board has denied Petitioner parole at three prior suitability

23    hearings, (primarily, 'the commitment offense').  Petitioner filed the

24    instant petition after the March 15, 2006, parole consideration hearing.  At

25    that hearing, the Board denied Petitioner parole based upon the 'commitment

26    offense', and 'a need for some sort of self-help.'

27    However, the administrative record and or psychological evaluations

28    prepared about him do not support these findings.  Petitioner's case is

1   exactly what Biggs envisioned when it stated that repeated refusal to grant

2   a parole date to an inmate with an exemplary post conviction record may

3   violate the prisoner's due process rights. Biggs, 334 F. 3d at p. 919. The

4   record is replete with evidence of Petitioners rehabilitation, including

5   positive psychological evaluations, extensive self-help, through education

6   and vocational achievements, as well as all therapy available to him. Most

7   notably, more than fifteen years without any serious disciplinary

8   infractions, R.V.R., CDC-115's, (with absolutely no indicator of any violent

9   conduct throughout his entire incarceration, four of which have been in

10  close quarters, "Dorm Living" with approximately 375 inmates.))

11      While the Board may have been justified in relying on Petitioner's

12  'commitment offense' for some time, under these circumstances a continued

13  reliance on the commitment offense do not now amount and or constitute 'some

14  evidence' having an 'indicia of reliability', and violates due process. See

15  Hill, 472 U.S. at p. 455; Biggs, 334 F. 3d at p. 917; Irons, 358 F. Supp. 2d

16  at p. 947, Masoner V. State, 2004 WL 1080177 * 1-2 (C.D. Cal. 2004).

17      The other factor relied upon by the Board, "A need for Self-Help," are

18  not supported by 'some evidence' having an 'indicia of reliability.'

19      As discussed herein, due process requires that 'some evidence' support

20  the decision to deny parole. Hill, 472, U.S. at p. 455; Biggs, 334 F. 3d at

21  p. 914; Caswell, 363 F. 3d at p. 939. The other stated reason by the Board,

22  (BPH) for finding Petitioner unsuitable, the need for some sort of self-

23  help, lacks any medical or evidentiary support. The Board's conclusion that

24  Petitioner needed to participate in more 'self-help' in order to gain more

25  insight into his offense is contradicted by the psychological evidence in

26  the record. The Board has not advanced any medical and or psychological

27  reports that are inconsistent with the 2002 psychological report by Dr. E.

28  W. Hewchuck, ph. D. Which stated: "Inmate Castaneda's violence potential

within a controlled institutional setting is below average relative to the inmate population. If released to the community, inmate Castaneda's violence potential is estimated to be no more than the average citizen in the community."

During his time in prison, Petitioner has enhanced his ability to function within the law upon release through participation in self-help, Education and or Vocational programs as well as institutional job assignments. On May 27, 1993, Petitioner obtained a "High School Equivalency Certificate", (See Attached Hereto, Marked As Exhibit "B"). On June 26, 2002, Petitioner was awarded a "Diploma of Graduation" which stated as follows: "M. Castaneda has satisfactorily completed a 44 week course in 'Anger Management' and is hereby awarded this certificate". (See Attached Hereto, Marked As Exhibit "C".) On February 7, 2005, Petitioner was presented and or awarded, by the Prison Industry Authority a "Certificate of Proficiency", "Machinist, Wood/CNC Operator." (See Attached Hereto, Marked As Exhibit "D".) On October 1, 2005, Petitioner was awarded with a "Certificate of Completion", "Anger Management". (See Attached Hereto, Marked As Exhibit "E".) Also (See Attached Hereto, Marked As Exhibit "F", CDC-General Chronos, commending Petitioner for his participations in various type of programs, including, "Inmate Employability Program", "Anger Management", "Muslim Development Center, (Twelve Week Course) in Anger Management, As well as laudatory Chronos for Alcoholics Anonymous, and or Narcotic Anonymous, and "Individual Therapy" with Dr. Terrini, ph. D.

Petitioner has participated in all Self-Help programs available to him. Therefore, the Board's stated reason for the denial of parole, March 15, 2006, that (Petitioner needed more self-help) is not supported by the evidence presented herein.

NEVERTHELESS, "California prisoner's like [Castaneda] have a cognizable

1  liberty interest in release on parole." McQuillion V. Duncan, (9th Cir.

2  2002); also see In re Rosenkrantz, 29 Cal. 4th 616, 661, and In re Mark

3  Smith, 109, Cal. App. 4th 489, 503, recognizing a liberty interest), Citing

4  Greenholtz V. Nebraaka Penal Inmate, 442, U. S. 1, 7, and McQuillion V.

5  Duncan, 306 F. 3d 895, 903, the Court in Biggs V. Terhune, 334 F. 910, 914-

6  915, held that "the California parole scheme vests in every inmate a

7  cognizable liberty interest," and "th[is] liberty interest is created, not

8  upon the grant of parole, but upon the incarceration of the inmate [;]",

9  therefore, under the Due Process Clause (5th and 14th Amendments) of the

10 United States Constitution, evidence used by the Board to support parole

11 denial must satisfy the necessary federal indicia of reliability standards.

12 The McQuillion, Court also noted on 'p. 901', that under California's Penal

13 Code § 3041, (b), "the panel or board shall set a release date unless it

14 determines that the gravity of the current convicted offense or offenses, is

15 such that consideration of the public safety requires a more lengthy period

16 of incarceration for th[e] inmate." (Emphasis added). Similarly, in In re

17 Mark Smith, supra at p. 503, the Court held, "In sum the governing law

18 [Penal Code § 3041 (b)] provides that the board must grant parole unless it

19 determines that the public safety requires a lengthier period of

20 incarceration for an individual because of the gravity of the offense

21 underlying the conviction." [Citation] (In re Rosenkrantz, supra 29 Cal.

22 4th at pp. 653-654.) (Emphasis added.)  In In re Ramirez, 94 Cal. App. 4th

23 549, 569-570, and in In re Ernest Smith, 114 Cal. App. 4th 343, 366-367, the

24 Court held, "a crime must be particularly egregious (especially graver) to

25 support a parole denial, requiring that the Petitioner must have

26 intentionally carried out his offense in a manner meant to torment,

27 terrorize, or inflict prolonged pain and suffering on the victim, or

28 demonstrated behavior that could support a finding of special circumstances

1   to be denied parole based on the seriousness of his crime," which the facts

2   show did not occurred in the instant crime. (Also see In re Van Houten, 116

3   Cal. App. 4th 339, making similar findings.) Placing this kind of finding

4   in mathematical perspective concerning the frequency at which it should

5   occur, the Court in In re Ernest Smith, supra at p. 353, held that, "parole

6   is the rule, not the exception," while the Court in In re Rosenkrantz,

7   supra 29 Cal. at p. 683, held,

8       "The Board's [exception to the requirement of setting a
        parole date] based on the gravity of the life term inmate's
9       current or past offenses should not operate as to swallow the
        rule that parole is "normally" to be granted. Otherwise, the
10      Board's case-by-case ruling would destroy the proportionality
        contemplated by Penal Code section 3041, subdivision
11      (a)....Therefore, a life term offense or any other offenses
        underlying an indeterminate sentence must be particularly
12      egregious to justify the denial of a parole date." In re
        Ramirez, supra 94 Cal. App. 4th at p. 570.)" (Brackets in
13      Original).)

14   In addition, the Board routinely denies parole based on the

15   circumstances of the offense, even though the prisoner has served a term

16   exceeding that which was designated by statutory and regulatory law for it's

17   type, degree, and circumstances, and routinely does so absent facts that the

18   offense is among the exception and particularly egregious, i. e., specially

19   grave, as is occurring in the instant case. Further depriving prisoner's

20   such as Petitioner of his liberty interest in parole by making a decision

21   other than as designated by governing statute. (Rosenkrantz, id., 29 Cal.

22   4th p.683, requiring that the Board's case-by-case decision not override the

23   proportionality contemplated by Penal Code § 3041 (a).) Also see Little V.

24   Hadden, 504 F. Supp. 558, 562, holding "it is irrational for seriousness of

25   the offense to first be used to determine the approximate [matrix] period

26   and then to be used again as the stated reason for confining a person beyond

27   that guideline.' [Citation].")

28   Reviewing the same California parole statute, the Court in Biggs, held

at p. 914, that:  [when] a state's statutory scheme,...uses mandatory language, [it] creates a presumption that parole release will be granted when or unless [those] certain designated findings are made, and [thus it] gives rise to a constitutional liberty interest."  The statutory '''designated" factor in California on which parole determinations are made is "the gravity of the [inmate's] crime or crimes."  Further, <u>Biggs, id.</u>, at p. 916-917, held, "that while a prisoner's commitment offense and prior history could initially provide reliable evidence justifying parole denial, if they remained disciplinary free and committed no new crimes in prison and demonstrated rehabilitation, these factors could not continue to do so, otherwise the Petitioner's right to due process under the federal constitution would be violated, as is occurring in the instant case.  In particularly the Court in <u>Biggs</u> noted:

> "The requirements of due process vary with the private and governmental interest at stake and the circumstances of the alleged deprivation.  See e.g. Morrisey V. Brewer, 408 U. S. 471, 481 (1972) ("[d]ue process is flexible and calls for such procedural protections as the particular situation demands.").  To ensure that a state created parole scheme serves the public interest purposes of rehabilitation and deterrence, the Parole Board must be cognizant not only of the factors required by state statute to be considered, but also the concept embodied in the Constitution requiring due process of law.  See e.g. Greenholtz, 442 U. S. at 7-8. ¶...As in the present instance, the parole boards sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can initially be justified as fulfilling the requirements set forth by state law [; however,] over time...should [a Petitioner, as in this case, have] continued[d] to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole. ¶...A continued reliance in the future [,following the initial denial,] on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."

Disregarding the Courts repeated criticism of its unsupported findings of a need for some sort of treatment, such as therapy or self-help despite overwhelming contrary psychological evidence that the inmate needs no further treatment, the Board made an unsupported conclusory declaration that Petitioner "need[s] further therapy in order to "face, discuss,, and understand, and cope with stress and conflict in a non-destructive manner." (See e. g., In re Ramirez, supra, at pp. 571-572, and In re Rosenkrantz, 80 Cal. App. 4th 409, 426, finding an inmates's due process is violated when the Board replaces positive psychological findings with their own unsupported conclusory findings, as has transpired in the instant case, rendering their decision arbitrary and capricious.) See Attached Hereto, Marked As Exhibit "G" Psychological Evaluation, (2002) by Dr. E. W. Hewchuck, ph. D.

California's parole scheme '''creates a presumption that parole release will be granted' unless the statutorily defined are made." (Id., quoting Board of pardons V. Allen, (1987) 482 U. S. 369, 378.) To protect that interest an application for parole must be "duly considered." (In re Schengarth, (1967) 66 Cal. 2d 295.) Due consideration means a determination of parole suitability consonant with due process. (In re Sturm, 1974) 11 Cal. 3d 265; In re Minnis, (1972) 7 Cal. 3d 639, 649 ["parole cannot be withheld unless by means consonant with due process"].) The primary thought, not sole measure of due process in parole hearings is whether the Board's decision is supported by "some evidence." (In re Ramirez, supra, 94 Cal. App. 4th at pp. 561-564.) An additional measure is whether "the Board has honored in a 'practical sense' the applicant's right to 'due consideration.''' (id., at p. 564.)

A.   "THERE MUST BE "SOME EVIDENCE" TO SUPPORT THE BOARD'S DECISION."

The Board may only deprive Petitioner of his liberty interest in parole

by finding that there is 'some evidence' that falls within the exception to the normal grant of parole contemplated by Penal Code section 3041. McQuillion, supra 2002 WL 31115518, *5.); In re Rosenkrantz, 29 Cal. 4th 616, 661, and In re Mark Smith, 109 Cal. App. 4th 489, 503, recognizing a liberty interest.)   California Court's have consistently held that the appropriate standard of judicial review of parole decisions is "some evidence."   In re Powell, (1988) 45 Cal. 3d 894, 903, 904;   In re Rosenkrantz, (2000) 80 Cal. App. 4th 409, 423, [the Board's 'discretion, although broad, is not absolute, and the Board's decisions must be supported by "some evidence."']; In re Ramirez, supra 94 Cal. App. 4th at p. 563, ["'some evidence' standard is appropriate for review of parole suitability determinations."]; In re Dannenberg, (2002) Cal. App. 4th 95, 2002 WL 31087355, *5; In re Morrall, (2002 Cal. App. 3rd Dist.) __ Cal. App. 4th ___, supra, 2002 WL 31108921, *11 [applying the same standard to the Governor's parole decisions].)

B.   THE BOARD MUST ALSO HONOR A PAROLE APPLICANT'S RIGHT TO DUE CONSIDERATION.

While "some evidence" having "some indicia of reliability" provides the standard of evidentiary sufficiency for due process in the parole context, "it is an additional requirement of due process, not a substitute for other established due process requirements." (In re Ramirez, supra 94 Cal. App. 4th at pp. 563-564.) The Court must also "ensure that the Board has honored in a 'practical sense' the applicant's right to 'due consideration.'"(id., at p. 564.) For example, the Board could not "determine whether inmates are suitable for parole by flipping a coin" and then simply point to "some evidence" in the record to support the result. (id.) Nor could the Board "routinely deny parole for a certain class of prisoners under a blanket policy...and shield itself with a case-by-case invocation of the "some

1  evidence" standard." (Id.)  Finally, the Board could not base It's
2  decisions on bias or allow bias to affect in any way it's decision making
3  process.  (Id., at p. 563.)  These examples show that to satisfy due
4  process, there must be a non-arbitrary, rational, non-capricious, non-
5  whimsical nexus between the Board's actual reasoning, the officially stated
6  reasoning and the evidence.

7  The Board's March 15, 2006, parole denial was unlawful under all of the
8  above standards.  Various Court's have already found that the Board has a
9  policy against granting parole to prisoner's like Petitioner, approving
10 parole in only 2% of the cases it hears.  And this despite the statutory
11 mandate that parole must 'normally be granted' to such prisoner's. (Pen.
12 Code § 3041.)  Normally means "constituting the norm" or "typical."  (The
13 American Heritage Dictionary of the English Language (4th ed 2000.))
14 Synonyms include:   Commonly, consistently, customarily, frequently,
15 generally, habitually, naturally, often, regularly, and routinely.  (Roget's
16 II: The New Thesaurus (3rd ed., 1995).)  The Legislature's use of the term
17 therefore requires that the Board's typical or regular practice should be to
18 calculate and grant parole dates.  (see Lungren V. Dukemejian, (1988) 45
19 Cal. 3d 727, 735; Bodell Construction Co. V. Trustees of California State
20 University, (1988) 62 Cal. App. 4th 1508, 1515, [under the "plain meaning"
21 rule of statutory construction, and if the language is clear and unambiguous
22 there is no need for construction].)

23 Granting parole in approximately 2% of the cases the Board hears does
24 not come close to "normally" granting parole.  Even though the Board
25 routinely invokes the exception that the offense is "exceptionally callous,"
26 warranting a longer sentence and rendering the inmate unsuitable for parole,
27 the Board's fixation on the Petitioner's commitment offense has operated to
28 swallow the rule that parole shall normally be granted.  (See In re Ramirez,

supra 94 Cal. App. 4th at p. 570.)  The Board's policy and practice suggests that the panel approached Petitioner's hearing with a predetermined finding of unsuitability, intent on finding any possible evidence in the record to support that finding.  Being subject to the Board's unlawful policy violates Petitioner's Constitutional Right and renders his continued incarceration under that policy unlawful.

C.  THERE IS NO EVIDENCE THAT PETITIONER CURRENTLY PRESENTS AN UNREASONABLE RISK TO PUBLIC SAFETY.

The Board "shall normally" set a parole date "unless it determines that the gravity of the current convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual."  (Pen Code § 3041, subd., (a) and (b).) The Board's own interpretation of that statute allows it to find an inmate unsuitable for parole based on the commitment offense if "the prisoner committed the offense in an specially heinous, atrocious or cruel manner." (Cal. Code Regs., tit., 15, § 2402, subd., (c)(1).)  The Board may also consider Petitioner's criminal history and his institutional conduct.  (Cal. Code Regs., tit., 15, § 2402, subd., (d)(6) and (c)(6).)  However, the record does not support a finding of unsuitability based upon any of those factors.

D.  THERE IS NO EVIDENCE THAT THE OFFENSE WAS CARRIED OUT IN AN ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL MANNER, AND SUCH A FINDING IN ITSELF LEGALLY INSUFFICIENT.

In order to justify denying parole based on the commitment offense, the Board was required to find that "the prisoner committed the offense in an specially heinous, atrocious or cruel manner."  (Cal. Code Regs., tit., 15, § 2402, subd., (c)(1).)  In this case, the facts clearly show it did not.

The Board must use only the gravest offenses as grounds for refusing to

set a parole release date, if it is to fulfill it's obligation to normally set release dates as to provide uniform terms for similar offenses." Here, the Board made no attempt to distinguish this crime from those it considers less grave. "In order to comply with the parole policy established by the Legislature in Penal Code section 3041, the Board must weigh the inmate's criminal conduct, not against ordinary social norms, but against other instances of the same crime or crimes...[The Board must also] consider the length of time the Inmate has served in relation to the terms prescribed by the Legislature for offenses under consideration, in order to arrive at a "uniform" term as contemplated by Penal Code section 3041, subdivision (a)."

The victim in this case was not abused, defiled and or mutilated. (See Cal. Code Regs., tit., 15, § 2402, subd., (c)(1).) The Board would have been hard pressed to demonstrate how this crime was committed in an specially cruel manner---and It is undisputed that the Board did not even try. The Board clearly failed to follow the law, because the panel did not compare Petitioner's conduct with that of any other person convicted of "Attempted Murder". The Board's decision should be set aside for this reason alone.

E.  THE BOARD'S FINDING THAT PETITIONER "NEEDS ADDITIONAL TIME" :::
    CONSTITUTE AN ABUSE OF DISCRETION.

The trial Court does not fix the period of confinement for prisoner's convicted of "Attempted Murder," and sentenced to State Prison for a term (e.g., 15 years-to-life) with the possibility of parole. Instead the Board is authorized to determine whether and when such prisoner's are released from prison. (Pen. Code § 3040.) In order to prevent the unguided abuse of discretion condemned by the California Supreme Court in In re Rodriguez, (1975) 14 Cal. 3d 639, the Board developed guidelines for setting terms of imprisonment for specific crimes. These guidelines are referred to as the

1  "Matrix". (Cal. Code Regs., tit., 15, § 2403.)

2  Rodriguez held unconstitutional the parole Board's authority and

3  practice of setting the term of indeterminately sentenced prisoner's at the

4  maximum, which was life. Holding that it's obligation to "ensure that the

5  Indeterminate Sentencing Law is properly administered...is not limited to

6  consideration of procedure due process alone," The Court found that the

7  Petitioner's life sentence was excessive and disproportionate, and ordered

8  him released from custory. (Rodriguez, 14 Cal. 3d at pp. 649, 656.)

9  Thereafter, the Board adopted the 'matrix' to guide the commissioners

10  discretion when setting terms. (Cal. Code Regs., tit., 15, § 2403.)

11  Under both the minimum term set by statute and the base term defined by

12  regulations, Petitioner is entitled to be released no later than October 9,

13  2002, which is 12 years after the life term began. ["No prior relationship

14  with victim, requires a base term of either 10, 11, and or 12 years"].) And

15  even that sentence would be unrealistic because it assumes that Petitioner

16  would receive the maximum base sentence under the 'matrix' and that

17  Petitioner would not be awarded any good time credits towards that sentence.

18  (Cal. Code Regs., tit., 15, § 2410, subd., (b).) ["life prisoner's

19  typically receive four months off there sentence for each year actually

20  served in prison, equaling approximately (60) months credits to date,

21  (2006)."].) Wherefore, Petitioner has served in excess of 21, years "+" on

22  the 7-to-life term.

23  Under Rodriguez, Petitioner's conduct in prison cannot be disregarded.

24  In fact, these postconviction factors must weigh more heavily than the

25  commitment offense, particularly when the crime is not "specially heinous."

26  (In re Rodriguez, supra 14, Cal. 3d at p. 652.) Yet, the Board did largely

27  disregard these factors, instead relying on a single restatements of the

28  facts of the crime, more than 17 years ago. Factors that should be used to

determine the release date under the 'matrix' not as a basis for denying

parole. The Board's finding that Petitioner "needs additional therapy in

order to face, discuss and cope with stress in a non-destructive manner,"

(Exhibit "A", p. 72, L.'s 12-18), is vague and violates Rodriguez and the

Matrix. This statement further contradicts the finding of mental health

professionals, (See Attached Hereto, Marked As Exhibit "G", Psychological

Evaluation, 2002.)

F.   PETITIONER HAS PROPERLY USED THE PETITION FOR WRIT OF HABEAS
     CORPUS TO OBTAIN A DECLARATION OF HIS RIGHTS TO AN UNBIASED
     DECISION MAKER.

The Board's bias against granting parole to those convicted of life with

the possibility of parole deprives Petitioner of his right to due process

under the State and Federal Constitution.

"[T]here is no dispute that [due process] minimally contemplates the

opportunity to be fully and fairly heard before an impartial decision

maker." (Catchpole V. Brannon, (1995) 35 Cal. App. 4th 237, 245; cf. Cal.

Code Jud., Conduct, Cannon 3(B)(1).)  ["A judge shall perform judicial

duties without bias or prejudice."].)  Thus, in parole revocation and prison

disciplinary procedures, the Supreme Court has held that the decision maker

must be impartial. (Morrissey V. Brewer, (1972) 408 U. S. 471, 489; Wolf V.

McDonnell, (1974) 418 U. S. 539, 571.)  So too must those who decide whether

a prisoner should be released on parole. (Sellars V. Procunier, (9th Cir.

1981) 641 F. 2d 1295, 1303.)

Bias is a "predisposition to decide a cause or an issue in a certain

way, which does not leave the mind perfectly open to conviction." (Black's

Law Dictionary, at p. 162, (1990 6th ed.); Pacific and Southwest Annual

Conference of the United Methodist Church V. Superior Court, (1978) 82 Cal.

App. 3d 72, 86.)  Bias is evaluated by objective rather than subjective

standard. The question is not whether the decision maker is actually bias,

(17).

1  but whether a reasonable person would entertain doubts about whether the

2  decision maker is bias. (Catchpole V. Brannon, supra 36 Cal. 4th at p. 245,

3  [analyzing bias under Code of Civ. Proc., § 170.1].)  Due process is

4  violated not only when there is actual bias, but when circumstances create

5  the likelihood or appearance of bias.  (Peters V. Kiff, (1972) 407 U. S.

6  493, 502.)  Thus, the Court need not look into the minds of the Board's

7  Commissioner's to determine their mental state, but need only examine what

8  they say or do. (McKay V. Superior Court, (1950) 98 Cal. App. 2d 770, 776.)

9  The Board's bias against granting parole is abundantly clear, given it's

10 practice of granting parole in only 2% of the cases it hears, despite the

11 statutory mandate that parole must normally be granted.

12     Petitioner has the right to a fact-finder who has not predetermined the

13 outcome of the hearing.  (Withrow V. Larkin, 421 U. S. 35 (1975) (a fair

14 trial in a fair tribunal is a basic requirement of due process, and this

15 rule applies to administrative agencies which adjudicate as well as to

16 court's); Edwards V. Balisok, 520 U. S. 641 (1997) (recognizing due process

17 claims, based on allegations that prison disciplinary official was biased

18 and would suppress evidence of innocence); Bakalis V. Golembeski, 35 F. 3d

19 318, 326 (7th Cir. 1994) (a decision-making body "that has prejudged the

20 outcome cannot render a decision that comports with due process").

21     Court's too many to mentioned have found that the right to a

22 disinterested decision-maker, who has not prejudged the case, is a

23 fundamental guarantee against arbitrary and capricious government conduct in

24 the California's parole context.  (Rosenkrantz, 29 Cal. 4th at p. 677,

25 (parole decisions must reflect an individualized consideration of the

26 specific criteria and must not be arbitrary and capricious"); In re Ramirez,

27 94 Cal. App. 4th 549, 563, (2001) ("some evidence" standard is "only one

28 aspect of judicial review for compliance with minimum standards of due

(18).

process" (citing <u>Balisok</u>) and Board's violate due process if it's decision is "arbitrary and capricious"); <u>In re Minnis</u>, 7 Cal. 3d 639. (1972) (blanket no-parole policy for a certain class of prisoner's is against the law); <u>(In re Morrall</u>, 102 Cal. App. 4th 280 (2003). Petitioner has a guarantee of a neutral decision maker in a suitability hearing, this is fundamental as well as the right to a neutral judge in a court proceeding. <u>Sellars V. Procunier</u>, 641 F. 2d 1295 (9th Cir. 1981) (holding that California's parole officials, analogous to judges, are entitled to absolute immunity).

The Ninth Circuit Court of Appeals has previously acknowledged California inmate's due process right to a parole suitability hearing by a neutral decision maker. <u>O'Bremski V. Maas</u>, 915 F. 2d 418, 422, (9th Cir. 1990). In that case the appellate court reached the conclusion that a neutral parole suitability panel would reach the same conclusion and denied relief. The Court in <u>Melvyn H. Coleman V. Board of prison Term's</u>, did not allow the same conclusion, holding that, "The record in this case simply will not permit the same conclusion. The requirement of an impartial decision-maker transcends concern for diminishing the likelihood of error. As the Supreme Court clearly held in <u>Balisok</u>, "a decision made by a fact-finder who has predetermined the outcome is <u>per se invalid</u> -- even where there is ample evidence to support it." 520 U. S. at 648.

Even in cases in which the judge has great discretion - as the Board does - courts have recognized that the decision maker's bias denied the parties a fair hearing. (e.g., <u>Richardson V. L. A. County Bureau of Adoptions</u>, supra 251 Cal. App. 2d 222; <u>In re Marriage of Iverson</u>, (1972) 11 Cal App. 4th 1495, 1501; <u>Hall V. Harker</u>, (1999) 69 Cal. 4th 836.)

In <u>Richardson</u>, a married couple sought to adopt a hearing child. Investigations by social services agency revealed nothing but excellent evaluations of the couple, their home and the way they raised their other

1    adopted hearing child.  Before hearing any evidence in the case, the judge

2    had written the adoption bureau, stating, "We are confronted with a  problem

3    of deaf-mutes wanting to adopt a child....I believe that...this adoption

4    should be nipped in the bud before these unfortunate people get too attached

5    to the child, as in my opinion, we are not doing the right thing by the

6    youngster in signing and approving an adoption of deaf-mutes." (Richardson,

7    supra 251 Cal. App. 2d at p. 229.)  The trial court denied the couple's

8    petition for adoption, ruling that it would not be in the best interest of

9    the hearing child to have deaf-mute parents. (Id., at p. 223-224.) 'The

10   Court of Appeals recognized that adoption proceedings were unique and that

11   the judge abused that discretion, because he was bias against deaf-mutes

12   parents without regard to their character and abilities. (id., at p. 237.)

13   '''The discretion intended, however, is not a capricious or arbitrary

14   discretion, but an impartial discretion, guided and controlled in it's

15   exercise by fixed legal principles.  It is not a mental discretion, to be

16   exercised ex gratia, but a legal discretion, to be exercised in conformity

17   with the spirit of the law and in a manner to subserve and not to impede or

18   defeat the ends of substantial justice.''' (id., at p. 238, quoting Bailey

19   V. Taaffe, (1866) 29 Cal. 422, 424.)

20       In In re Marriage of Iverson, supra 11 Cal. App. 4th 1495, the parties

21   disputed the validity of a prenuptial agreement. The Court of Appeals found,

22   based in part on the trial court's pre-hearing statements, that the judge

23   harbored preconceived perceptions of the parties based on their own gender.

24   Under these circumstance, the Court held, "it is impossible for wife to

25   receive a fair trial. (id., at p. 1499.) The Court reversed the judgement

26   in favor of the husband and directed that the matter be assigned to a

27   different judge. (id., at p. 1502; also see Catchpole V. Brannon, supra 13

28   Cal. App. 4th 237, 262, [after finding that trial court exhibited gender

1  bias judgement in sexual harassment case reversed and remanded for new trial

2  by different judge]; Hall V. Harker, supra 69 Cal. App. 4th at pp. 842-843,

3  [judge in malicious prosecution case held preconceived ideas about

4  proclivity of attorney's to chum litigating for financial[.)  The Board's

5  bias against Petitioner and nearly all other prisoner's' serving life with

6  the possibility of parole is implicit in it's normal practice of denying

7  parole.

8      It is without a doubt that habeas corpus is the proper vehicle to obtain

9  a declaration of his rights in the parole consideration process.  "It is

10  well recognized that the habeas corpus procedure may be properly utilized to

11  obtain a declaration of rights in the prevailing circumstances."  In re

12  Head, (1983) 147 Cal. App. 3d 1125; 1131!)  "A habeas corpus petition is

13  available to seek a declaration and enforcement of an inmate's rights.

14  [Citations].   Moreover, a trial court may grant habeas corpus on

15  Petitioner's 'prospective or class relief' to redress recurring deprivations

16  of rights at correctional facilities." (Mendoza V. County of Tulare, (1982)

17  128 Cal. App. 3d 403, 420, citing In re Brindle, (1979) 91 Cal. App. 3d at

18  p. 420.)  Petitioner properly pursues habeas relief here, because the need

19  to remedy the Board's continued violations of prisoner's rights at parole

20  hearings.  "The very nature of the writ demands that it be administered with

21  the initiative and flexibility essential to insure that miscarriages of

22  justice within it's reach are surfaced and corrected."  In re Carr, (1981)

23  116 Cal. App. 3d 962, 964, fn. 1.)  Furthermore, the proposition that an

24  inmate can obtain review of an adverse parole determination by writ of

25  habeas corpus [is] too well settled for dispute." (In re Morrall, supra

26  (2002) WL 31108921, *10, 11.)  Wherefore, Respondent's cannot contend that

27  habeas corpus is not the proper means by which Petitioner may obtain a

28

1    declaration of his rights, relative to the Board's bias against granting

2    parole to prisoner's convicted to life with the possibility of parole.

3       Here, the Board's denial ignored the factors demonstrating Petitioner's

4    suitability for parole.  "All relevant, reliable information available to

5    the panel shall be considered in determining suitability for parole." (Cal.

6    Code Regs., tit., 15, § 2402, subd., (b), emphasis added.)  The Board's

7    failure to consider the factors tending to show suitability violated this

8    provision.  The record clearly establishes ("Exhibit "A", 'DECISION', p. 72-

9    91) that the commitment offense was the primary reason for the one (1)

10   years denial.  In finding Petitioner unsuitable for parole the panel stated:

11   "the inmate is not yet suitable for parole plus a danger to society if

12   released from prison.  As it regards the commitment offense and this was the

13   intent to murder Fidel Carrion on October 9, 1990 in the City of Isuza."

14   (id., Exhibit "A", p. 72, L.'s 12-26.)  All other factors weighed in favor

15   of finding Petitioner suitable for parole.  Petitioner has no juvenile

16   record.  (Cal. Code Regs., tit., 15, § 2402(d)(1)(no juvenile record tends

17   to show suitability).  In addition, Petitioner had a stable social history.

18   (Cal. Code Regs., tit., 15, § 2402(d)(2)(stable social history tends to show

19   suitability).  At that hearing, (March 15, 2006) Petitioner discussed his

20   remorse.  (Cal. Code Regs., tit., 15, § 2402(d)(3)(presence of remorse

21   indicates by understanding nature and magnitude of offense tends to show

22   suitability).  Petitioner told the panel, "I'd like to apologize.  I take

23   responsibility.  I've held myself accountable for what I've done.  I have no

24   one to blame but myself.  I've done nothing but think about what I could do

25   to change the situation and it's an unchanging fact that I did and I

26   apologize and I'm sorry for what I did.  All I can do is - from the time of

27   incarceration, my time and my commitment is to look forward and to better

28   myself to help my family understand what I did wrong.  I understand that.  I

make no excuses for my action. Like I said, I do take responsibility for -I'm truly sorry." (id., Exhibit "A', pp. 69-91.) Petitioner has realistic plans for the future. (See Exhibit "A", p. 38-71, Parole Plans.)(Cal. Code Regs., tit., 15, § 2402(d)(realistic plans or development of marketable skills tends to show suitability). Petitioner is now 45 years old. Petitioner's age clearly reduces the probability of recidivism. Petitioner has job offers and offers of residence. (id., at pp. 38-71.) Ultimately, Petitioner intends to own and operate a business, (Upholstery Industry). (See Attached Hereto, Marked As Exhibit "A", Parole Plans, at p. 38-71.)

This evidence is relevant to factors found in Title 15, California Code of Regulations, section 2402 (d), and clearly supports Petitioner's parole application, yet the Board largely ignored them, instead the Board primarily based it's parole denial on Petitioner's commitment offense.

"CONCLUSION"

The Board's unlawful decision in this case cannot stand. In the absence of any evidence to show that Petitioner currently presents an unreasonable risk of danger, he must be released on parole. In the alternative, this Court should order the Board to conduct a new hearing in accordance with the guidelines set in Ramirez. Specifically, the "Board must consider the gravity and the public safety implications of [Petitioner's] offense as they compare with other similar offenses, and in light of the terms prescribed by the Legislature for such offenses. The Board must consider [Petitioner's] psychological profile as a factor favoring his application for parole....The Board also must consider [Petitioner's] work history, education and or vocational, as well as (self-help) achievements...during his 16 plus years in prison as factors supporting his application." (In re Ramirez, supra 94 Cal. App. 4th at p. 572.)

Sincerely Submitted, Martin Castaneda

Dated: July 1, 2006

Martin Castaneda, In Pro. Se.

(23).